# William E. Tapper *v.* Sunlight Oil and Gasoline Company, Appellant.

*Principal and agent—Contract—Alteration of written instrument.*

An agent of a dealer in gasoline presented to a customer a contract signed by his principal as follows: " We agree to furnish you your supply of 75 gasoline from     to     bbls. per week, for the year 1895, at 7 cents per gallon."   The customer objected to the contract as it was offered, and the agent then drew a line over the words and spaces " from     to bbls. per week."   The customer then signed an acceptance of the contract in duplicate, the agent taking one copy and the customer the other.   The principal furnished oil as ordered under the contract, until the price materially increased, when it refused to furnish more than twelve barrels per week, exhibiting a contract in which the words " one to twelve bbls. per week " appeared over the erasure, making the contract read to furnish gasoline " from one to twelve bbls. per week."   In a suit by the customer on the contract the defendant did not produce its copy of the contract, and offered no evidence that the agent had exceeded his authority. *Held*, (1) that the paper presented by the agent to the customer was not a completed contract; (2) that the contract sued on, and produced by the customer, correctly expressed the agreement, and that the principal was bound by it.

Argued Jan. 4, 1899.    Appeal, No. 118, Jan. T., 1899, by defendant, from judgment of C. P. No. 3, Phila. Co., March T., 1896, No. 373, on verdict for plaintiff.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

At the trial it appeared that the paper sued upon was as follows :

"PHILADELPHIA, January 3rd, 1895.

"We agree to furnish you your supply of 75 gasoline ~~from      to      bbls. per week~~, for the year 1895, at 7 cents per gallon, delivered to 428 No. 64th Street. Empties to be returned at 95 cents each.

"SUNLIGHT OIL & GASOLINE CO.,

"WM. LIVEZEY, Mgr. & treas.

"Accepted, W. E. TAPPER."

The evidence showed that the line drawn through certain words and spaces in the contract had been placed there by defendant's agent after the contract had been signed by the principal. The plaintiff testified as to this line as follows :

"The contract was offered to me, and I read it over, and I said to the agent, 'What do you mean by this blank space?' and I said I would not sign the contract unless it was all filled up, and I said it did not look like the contract I made with the Atlantic Refining Company for oil, and Mr. Wolf said, 'That don't cut any figure ; we want you to sell plenty of gasoline,' and he took a pen and struck that out, and he said, 'How does that suit?' and I said, 'What about the empty barrels, you are giving some a dollar,' and he said, 'We will fix that,' and asked how it suited me, and I said it was all right, 'It gives me my supply for the year; and the empties for ninety-five, does it?' and he said, 'Yes,' and I signed it."

"Q. The line was drawn through there before you signed it, was it? A. Yes, sir."

In June, 1895, the defendant refused to furnish plaintiff with more than twelve barrels a week, whereupon plaintiff sent his wife, who exhibited to defendant's manager his copy of the contract. This the defendant's manager at once repudiated, and produced the duplicate, in which the words "from one to twelve barrels per week" appeared, and refused to deliver more than twelve barrels in any week except at the market price, which was then twelve cents instead of seven per gallon. Plaintiff purchased oil from other parties at the advanced price, and sued defendant for the difference.

The trial judge under objection and exception admitted the contract sued on in evidence. [3]

The court charged the jury in part as follows :

[The contract between the parties in this case is in writing, and of course it governs the court and the jury. There is no definite amount agreed upon by the parties. It would have been the easiest thing in the world to have put in any amount which would be satisfactory to either or both of them. But both of them preferred to have it unlimited, and it is in evidence that the agent of the defendant, who presented the paper, said, " The more you sell the better."] [5]

[Now, my interpretation of the contract is that they were bound to supply him or fill his orders for the oil which he required in his business. Of course, under such a contract as that, the plaintiff would not have a right to order an unreasonable amount of gasoline, and such a contract as that might involve the defendant in insolvency, but I do not recollect that there is any evidence in this case from which you might infer that there was an unreasonable amount required. Of course, every man has a right to extend his business, and under such a contract it might very well be that the plaintiff would take unusual means to extend his business, because there was no fixed limit of his liability, and he had a right to take advantage of the general market. But still, as I have already said, the plaintiff would not have a right to make extraordinary and unreasonable demands upon the defendant, but before the jury can pass upon such a question there should be evidence of some kind to induce the jury to believe that the demands were unreasonable and were made for speculative purposes, or there should be something to show you that the demands were out of the ordinary run of the man's business. So far as we know anything about it, it was to supply his ordinary business and fill the contracts he had made or was about to make. Of course, the defendant had no right to limit him in seeking contracts. That was his business and he took the risk.] [6]

There are always two sides to such a case, and if the price of gasoline had never risen above seven cents a gallon there would have been no lawsuit, but we probably would have had one if it fell below seven cents. However, lawsuits always arise out of contracts, even when in writing, when it is to the interest of one of the parties not to fill them. [The law will require every man to live up to his contract, and I will there-

fore charge you that unless you find that these orders were unreasonable and extraordinary, and you must find it from the evidence if at all, and there is no defense to the plaintiff's claim, because he showed you the amount of his business, and the amount he bought and sold, and the prices he paid.] [7]

I should also say that wherever there is a contract of this kind, the man who has the contract, if the other party refuses to fill the orders, has a right to go out into the general market and buy, and he can recover for any excess he pays over the contract price. He would therefore be entitled to recover the difference of five cents a gallon for the amount he bought, and also whatever loss there was to him between the eighty cents for the empty barrels and the contract price at which they agreed to take them, which would be fifteen cents per barrel. There are two items for you to consider, and for that amount the verdict must be for the plaintiff.

Verdict and judgment for plaintiff for $1,806.03. Defendant appealed.

*Errors assigned* among others were (3) in admitting in evidence the contract offered by plaintiff; (5–7) above instructions, quoting them.

*Walter C. Rodman,* for appellant.—It is the duty of a person dealing for the first time with an agent whose calling is not public, and who is merely employed by the principal to conduct the particular business out of which grows the contract sued upon, to know the extent of the agent's authority. If without knowing it he contracts with such agent, then he assumes the risk of disaffirmance of the authority of the agent by the principal, if the agent has exceeded that authority: Rice v. Jackson, 171 Pa. 89.

A party who avails himself of the act of an agent must, in order to charge the principal, prove the authority under which the agent acted. The burden of proof lies on him to establish the agency and the extent of it: Hays & Wick v. Lynn, 7 Watts, 525; Moore v. Patterson, 28 Pa. 512; American Life Ins. & Trust Co. v. Shultz, 82 Pa. 51; Union Refining Co. v. Bushnell, 88 Pa. 91; American Underwriter's Assn. v. George, 97 Pa. 241; Grim v. Bonnell, 78 Pa. 152; Whiting & Co. v.

Lake, 91 Pa. 349; B. & O. Relief Assn. v. Post, 122 Pa. 597; Langenheim v. Anschutz-Bradberry Co., 2 Pa. Superior Ct. 290.

Where the terms of the promise admit of more senses than one, the promise is to be performed in that sense in which the promisor apprehended it at the time the promisee received it: Williamson v. McClure, 37 Pa. 402.

*Edward W. Magill*, of *Alexander & Magill*, for appellee.— One who authorizes another to act for him in a certain class of contracts, undertakes for the absence of fraud in the agent within the scope of his authority: Brooke v. N. Y., Lake Erie & Western R. R. Co., 108 Pa. 529; McNeile v. Cridland, 168 Pa. 16; Xander v. Com., 10 Pa. 434.

The contract signed by the plaintiff, and upon which suit was brought, was the exact contract made and signed by the general manager and treasurer of the company. Running a pen through the blank spaces, by the defendant's agent, did not change the form of the contract, but left the quantity blank just as it was when signed by the defendant and placed in the hands of its agent to secure plaintiff's signature to it.

When an agent exceeds his authority, his principal cannot avail himself of the benefit of his act, and at the same time repudiate his authority: Penn. Natural Gas Co. v. Cook, 123 Pa. 170.

OPINION BY MR. JUSTICE McCOLLUM, October 6, 1899:

The contract in question is in the words and figures following, to wit: "Philadelphia, January 3rd, 1895. We agree to furnish you your supply of 75 gasoline ~~from    to    bbls.~~ ~~per week~~, for the year 1895 at 7 cents per gallon. Delivered at No. 428 N. 64th Street. Empties to be returned at 95 cents each. Sunlight Oil & Gasoline Co., H. Livezey, Mgr. & Treas. Accepted W. E. Tapper." In the negotiations which resulted in the contract included herein the defendant was represented by its agent employed to sell its gasoline. The paper presented to the plaintiff by the agent of the defendant was not a completed contract, although it was signed by the latter. It was an offer to furnish to the former his supply of seventy-five gasoline for a time and on terms specified therein. There were two blank spaces in it, through which spaces and five words in close

proximity to them, a line was drawn by the agent.   This was
followed by an acceptance from the plaintiff of the offer as it then
stood.   If the action of the agent in drawing the line aforesaid
was within the scope of his authority the plaintiff's acceptance of
the offer constituted his contract with the defendant, and if the
agent exceeded his authority in this particular and his act was
ratified by his principal the result would be the same.   As the
defendant made no objection to compliance with the terms of
the contract before there was an advance in the price of gaso-
line it may be fairly inferred that the real ground of its refusal
to comply with its contract was the appreciation in the market
value of the article it had previously agreed to furnish the
plaintiff for the period of one year.   It may be noted here that
the contract was in duplicate, each party to it having a copy of
it, and knowledge of its terms.   The uncontradicted testimony
showing that the copies delivered to the parties by the agent
of the defendant were precisely alike, and there being no aver-
ment or claim of any alteration by him in either of them the
inference is that the erasure of the line drawn by him as here-
inbefore stated, and the insertion of the words written over or
above it, was the work of his principal.   Another noticeable
fact in connection with the case is that the defendant has offered
no evidence showing that its agent exceeded his authority, or
produced on the trial the altered copy of its contract exhibited
to the plaintiff in justification of its refusal to furnish the gas-
oline as it had agreed to do.   To the facts already referred to
herein we may add the further fact that the defendant did not
notify the plaintiff of its intention to limit its sale of gasoline
under its contract with him to twelve barrels a week, until
June 5, 1895, when gasoline had advanced to twelve cents per
gallon.

The only conclusion deducible from the uncontradicted evi-
dence in the case is that the contract contained herein correctly
expresses the agreement and understanding of the parties to it.
By it the defendant was bound to furnish the plaintiff with the
gasoline he might require in his business during the year 1895,
and to pay to him ninety-five cents for each empty barrel re-
turned.   On the other hand, the plaintiff was bound to return
to the defendant each empty barrel at the price aforesaid, and
to pay for the gasoline furnished him at the rate specified in

the contract. The respective obligations of the parties were not impaired or in any wise affected by the rise or fall in the market of the price of the article to which their contract related, and probably if there had been no change in the market value of the article each party would have been satisfied with the contract by which they were respectively bound.

We have carefully examined and considered all the specifications of error in the case, and are of the opinion that there is nothing in either of them which would justify a reversal of the judgment.

Judgment affirmed.